IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - x
                                 :
IN RE:                           :        Case No. 12-27073
                                 :
TONY ARNEL MASSENBURG,           :
                                 :
               Debtor.           :        Greenbelt, Maryland
                                 :
- - - - - - - - - - - - - - - - x        October 19, 2015

**HEARING**

(229) Motion for Turnover of Property The Remaining
$30,012.45 of Debtor's NBA Pension Funds
filed by Tony Arnel Massenburg

(236) Opposition on behalf of Roger Schlossberg
filed by Frank J. Mastro

BEFORE:  THE HONORABLE THOMAS J. CATLIOTA, Judge

APPEARANCES:                     FRANK J. MASTRO, Esq.
                                 ROGER SCHLOSSBERG, Esq.
                                 Schlossberg and Mastro
                                 18421 Henson Boulevard, Suite 201
                                 Hagerstown, Maryland 21742
                                    On Behalf of Roger Schlossberg

                                 ERIC HANS KIRCHMAN, Esq.
                                 Kirchman & Kirchman
                                 15 West Montgomery Ave., Suite 205
                                 Rockville, Maryland 20850
                                    On Behalf of Debtor

Audio Operator:                  Daniel Walston

Transcription Company:           CompuScribe
                                 5100 Forbes Boulevard
                                 Suite 101
                                 Lanham, Maryland 20706
                                 (301) 577-5882

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

# <u>I N D E X</u>

Page

<u>Arguments</u>:

Eric Kirchman, Esq.
   On Behalf of Tony Massenburg                  3

Frank Mastro, Esq.
   On Behalf of Roger Schlossberg             9

Rebuttal Eric Kirchman, Esq.                  16

Surrebuttal Frank Mastro, Esq.              18

Ruling - Judge Thomas J. Catliota          19

1          **P R O C E E D I N G S**

2          THE CLERK:  The Bankruptcy Court for the District

3     of Maryland now resumes its regular session, The Honorable

4     Thomas J. Catliota presiding.  Please be seated and come to

5     order.

6          On the 2:00 docket the Matter of Tony Arnel

7     Massenburg, Case No. 12-27073.  Counsel, would you please

8     come to the Podium and identify yourselves for the Record.

9          MR. MASTRO:  Good afternoon, Your Honor.  Frank

10    Massenburg, on behalf of the Trustee, Roger Schlossberg.

11         THE COURT:  Good afternoon.

12         MR. SCHLOSSBERG:  Good Afternoon, Your Honor.

13    Roger Schlossberg, Trustee, Counsel for Trustee.

14         THE COURT:  Good afternoon.

15         MR. KIRCHMAN:  Good afternoon, Your Honor.  Eric

16    Kirchman, on behalf of Mr. Massenburg.

17         THE COURT:  Good afternoon.

18         MR. KIRCHMAN:  Who is also present.

19         THE COURT:  Good afternoon.  All right, so we are

20    here on the motion to turn over the remaining $30,000 that I

21    had required to be escrowed after the pension fund dispute.

22    So where are we, Mr. Kirchman?

23         MR. KIRCHMAN:  Yes, Your Honor, as the Court is

24    aware that on February 1st, 2013, the Trustee -- or

25    Mr. Massenburg deposited his pension fund of $550,429.20 into

1   the Debtor in Possession Account as the Trustee instructed

2   him and I guess the Court found that he had to.

3        Now following that, the Court has also made a

4   determination that there was $30,012.45 of deposits which

5   were non-exempt money that had, I guess, over the life of the

6   account been deposited into it.

7        Now the Bankruptcy Code permits a Debtor in

8   Possession of Chapter 11 to use non-exempt property for his

9   necessary living expenses.  In this case we have the non-

10  exempt property and the exempt property all mixed together.

11       Now Mr. Massenburg had filed monthly operating

12  reports, or monthly reports without objection by the Chapter

13  11 Trustee or any creditors from when the case was filed

14  until the time of the deposit in this account and that was

15  living expenses of $50,684 between the September -- December,

16  January, February, no, September --

17       THE COURT:  September to January 31st.

18       MR. KIRCHMAN:  September to Jan -- yes.  Yes, sir.

19  Following the deposit, the case went on for another nine

20  months in Chapter 11.  Now over the course of that time,

21  Mr. Massenburg spent more than what he had been spending

22  because it was his only source of the account and he spent --

23  I guess he spent three -- three hundred -- $331,718 from the

24  Debtor in Possession Account over the remaining nine months

25  that this case was in bankruptcy.

1       THE COURT:  In Chapter 11.

2       MR. KIRCHMAN:  I mean in Chapter 11, yes, before

3  the conversion of Chapter 7.  But at the time of the

4  conversion there was $193,000, 193,327.38 into the account.

5  Now the law is that Mr. Massenburg was entitled to spend non-

6  exempt money to pay his expenses.  Now what has happened --

7       THE COURT:  Well, he is entitled to, but he is not

8  required to.

9       MR. KIRCHMAN:  Well he is not required to, but I

10  think that anyone would find that that would be what someone

11  would do if they had a choice.  He didn't have a choice as to

12  how he was going to do this, he only had one account out of

13  which to live.

14       And I think the policy contained -- the Bankruptcy

15  Code is for a -- I know there is some competing interest for

16  the creditors, but I mean one of the overriding things is for

17  the Debtor to have a -- to have the benefit of all the

18  exemptions that he can.  I think they are supposed to be

19  construed in favor of the Debtor.

20       And in this case what would really serve that

21  purpose would be the finding that the $30,000 should be his.

22  Otherwise, he would have paid expenses that were payable with

23  non-exempt money -- with exempt money just because the U.S.

24  Trustee was wrong in ordering him to place it all into the

25  Debtor in Possession Account, or causing the Debtor to put it

into the Debtor in Possession Account.

It just works in unfairness and inequitable to have him pay what is properly payable with non-exempt funds with exempt property. It just doesn't seem to serve what the purpose of the exemption statutes are. And I think the law is clear, even though I couldn't find a case in this district stating this, but the case I did find said they are supposed to be construed in favor of the -- liberally construed in favor of the Debtor.

And having the Trustee with these assets keeping this $30,000 would work against that. Would penalize the Debtor for doing what he believed he was required to do, and paying his expenses out of this -- out of this money.

Now the U.S. Trustee never filed any objections to the expenses he was claiming and we think instead of -- I don't know if the Trustee wants the Court or however it wants to do, rule on every expense that was paid over those nine months, that doesn't seem like it would be a wise use of the Court's time.

But we have a history of what he was -- what was being paid before the deposit of the money and that works out to about $12,000 a month and should that be taken out over the course of the nine months, that would equal approximately -- leaves approximately $114,000, which would have been his ordinary expenses from the history that had been prior to the

1  deposit.

2       So having that, it is clear that the $30,000 would

3  have been used for his ordinary living expenses.  Now had the

4  money been deposited -- had his exempt funds been deposited

5  into a separate account as exempt property, and he had been

6  living out of his Debtor in Possession account which he was

7  authorized by Bankruptcy Law to do, he would clearly have

8  paid out the whole $30,000 and there wouldn't have been

9  anything on the date of conversion for the Trustee to get.

10       THE COURT:  But what about the Trustee's original

11  argument that led to escrowing the funds, that once you

12  commingle exempt funds and non-exempt funds they lose the

13  exempt status, you know, unless they are separately accounted

14  for, or separately classified, or put in separate accounts?

15       MR. KIRCHMAN:  But why did the law -- the case here

16  is that they are separate because I think the order was that

17  even though they were commingled they maintained their

18  separate identity and this Court entered an order just out of

19  an abundance of caution to protect the Bankruptcy Estate

20  pending a further order with regard to that $30,000.

21       And I can just read this, "This method of tracing

22  commingled funds are an equitable substitute for the

23  impossibility of specific identification, and therefore a

24  case must exercise case specific judgment to select the

25  method best suited to achieve a fair and equitable result on

1   the facts before them." And that is <u>United States</u> <u>vs.</u>

2   <u>Henshaw</u>, which is a 10th Circuit case, and that is Paragraph

3   15 of my papers. That's a 2004 case from the 10th Circuit.

4         So I mean that is basically what you have with

5   these commingling cases is there has to be some equitable

6   remedy arrived at by the Court because there is no hard and

7   fast rule how to do it. And I guess different equities

8   compete differently in every case.

9         But here, I mean it is pretty clear that we have

10  the policy of the exemptions which is supposed to benefit the

11  Debtor and his pension was clearly exempt. That he could pay

12  these funds -- with the $30,000 he could have paid his living

13  expenses.

14        Now he puts the money into the, the Trustee into

15  the Debtor in Possession Account, which I believe also the

16  law of the cases is that that was as a result of being

17  compelled -- I don't know if compelled, I can't remember

18  exactly the Court's wording, but he was required by the U.S.

19  Trustee's Office to do that.

20        So as a result of the U.S. Trustee actions, he

21  would be deprived of exemptions that he would be entitled to

22  under the law. Because if this were two accounts he would

23  have spent down the 30,000, and then he would have --

24        THE COURT: How do I know that is what would have

25  happened?

1    MR. KIRCHMAN:  Well, I mean I could call

2    Mr. Massenburg as a witness to say he would have spent that.

3    But I mean I think we know how humans work, how people work,

4    and why would someone expend exempt property when they don't

5    have to?

6         I mean I think that the Court is well within its

7    discretion to take into account in rendering a decision how

8    people would behave in a situation like this.  And the people

9    would usually behave to what their advantage is; otherwise,

10   why have the exemption?

11        I mean it just seems that this is working to defeat

12   the exemption of the pension, and that is what would happen

13   here.  He would be forced to use those exempt pension funds

14   to pay expenses which were properly paid by non-exempt

15   property and the Trustee would result in a windfall, the

16   Trustee of exempt property.  I mean that is basically what

17   would be happening here.  The Trustee would be able to take

18   this exempt property for the creditors.

19        THE COURT:  Okay.  Thank you.

20        MR. KIRCHMAN:  Thank you.

21        THE COURT:  Mr. Mastro?

22        (Pause.)

23        MR. MASTRO:  Thank you, Your Honor.  Mr. Kirchman

24   posits why would Mr. Massenburg spend exempt dollars rather

25   than non-exempt dollars?  Well, the answer is, as a Debtor in

1  Possession he is a Trustee.  He has a fiduciary duty, as a

2  debtor in possession, to maximize the Estate for the benefit

3  of creditors.

4        The result that the Debtor is seeking here is to

5  consume the entirety of the non-exempt assets for his own

6  personal expenditures and to leave nothing for the creditors

7  of the Estate.

8        Talk about windfall, it is actually Mr. Massenburg,

9  who, to date, has gotten a windfall.  Let's go back and look

10 at the funds, let's do some tracing, if we will.

11       Start on February 1 of 2013 and let's look at from

12 February 1 of 2013 to December 4th of 2013.  We look at the

13 Debtor's operating report and they only go through September

14 30th, but February through the end of September, those are

15 what, eight months, $344,000 over, 344,106 in aggregate

16 expenses.

17       Now from September 30th to the conversion date,

18 which is November 13th, looking at the Debtor's conversion

19 report, you see that an additional 38,459 has been dissipated

20 from the accounts.  And then between the conversion date of

21 November 13th and the date Mr. Schlossberg gets the funds

22 transferred over from Wells Fargo Bank, an additional $14,600

23 is gone, while the case is in Chapter 7.

24       All toll, February 1 through December 4th, $397,165

25 in expenses spent by the Debtor.  Then on top of that,

1  December 23rd of 2013, the Trustee, Mr. Schlossberg, pays out

2  10,000 to the Debtor per a court order, because there was a

3  time for briefing and the Debtor needed some funds.

4  And then, after this Court ruled the very next day,

5  April 1 of 2014, another $157,314 is turned over to the

6  Debtor.  So between what the Debtor spent subsequent to

7  February 1, and the monies turned over to the Debtor by

8  Mr. Schlossberg, $564,479, he had the use of.

9  The pension deposit was only 554,029.  That means

10  the Debtor has already received in excess of his pension

11  deposit, in excess by $14,050.

12  THE COURT:  But doesn't that beg the question -- I

13  heard you saying that he spent the money on the living

14  expenses that the Debtor is trying to get compensated for?

15  That is why the Debtor is saying he spent more than -- he

16  spent pension funds on living expenses, whether it is more or

17  less, that is what his argument is, he shouldn't be paying

18  his living expenses out of pension funds.

19  MR. MASTRO:  Well, at this point he has already --

20  that money is already spent.  That additional 14,000 is

21  already spent, so what is left is now 16,000.  So the

22  question is --

23  THE COURT:  Why is the 14 already spent?  Isn't the

24  Trustee holding 30,000?  There was 14 in the --

25  MR. MASTRO:  Yes.

1          THE COURT:  -- account before he put the pension

2   funds in, in the DIP account, $13,700 before he put the

3   pension funds in.  Put the pension funds in, at the time I

4   made the ruling, I said there is 14,000 as of February 1, he

5   put in another 15,000 or so, we will call it 16,000 --

6          MR. MASTRO:  Correct.

7          THE COURT:  -- leaving 30,000.

8          MR. MASTRO:  Correct.

9          THE COURT:  So that is the 30,000 that I had you --

10  that is the 30,000 I had the Trustee withhold.  Are you

11  saying -- well, you could establish that he spent that money,

12  or is it because it is all commingled?  How do you know what

13  he spent and what he didn't?

14         MR. MASTRO:  Because when you look at the balance

15  of the account --

16         THE COURT:  Yes.

17         MR. MASTRO:  -- and you trace it from February 1

18  through when the Trustee gets it, what did I say, 397,000 was

19  taken out of the account.

20         THE COURT:  Does it ever go down below the 30,000

21  though, because that is why I said --

22         MR. MASTRO:  At that point, no, but then once the

23  Trustee turned over the 10,000 and then the 157, it actually

24  dips below 30,000.  So Mr. Massenburg had the benefit of

25  564,000.  So --

1          THE COURT:  That is news, because I thought the

2    30,000 was not -- the 30,000 was the amount that went into

3    the -- that it was the balance of the DIP account as of

4    February 1 before the pension funds.

5          It was the 14,000 plus the amount that he put in

6    from February 1 to the conversion; that all added to 30,000.

7    I said that has got to be escrowed -- we will figure that

8    out --

9          MR. MASTRO:  Right, and it was.

10         THE COURT:  Okay.

11         MR. MASTRO:  And it was.  But I think -- I think

12   when the Trustee paid out to Mr. Massenburg in the April

13   payment I think we paid a little too much is what happened,

14   so he got that extra benefit of having those monies.  So --

15         THE COURT:  Then it would seem to me that this --

16   the motion should be for less than $30,000.

17         MR. MASTRO:  That is my point that, really, when

18   you account for that excess what we are really dealing with

19   is that 16,000.  And then you get to the question, well, is

20   it equitable then for Mr. Massenburg to consume the remaining

21   16,000.  And our argument is that Mr. Massenburg has a

22   fiduciary duty to the creditors; otherwise, we are taking all

23   of that money out the Estate, all those non-exempt assets.

24         THE COURT:  So go through your numbers again as to

25   why you say the 14,000 has already been paid back to him?

1    MR. MASTRO:  Okay, aggregate expenses, and this --

2    it is in our motion, part of it is in Footnote One on page

3    three in the text.  But basically if you look at the expenses

4    from February 1 of 2013 through December 4th of 2013, okay,

5    December 4th being the date that the monies were transferred

6    to the Trustee.

7         You look at the aggregate expenses, which we know

8    through the operating reports that end on September 30th,

9    344,106.  Then if you look at the conversion report, which is

10   November 13th of 2013, and you see the DIP -- or the decrease

11   in the balance of the accounts between September 30th and

12   November 13th of 2013 is 38,459.  And then you look at the

13   balance in the DIP account as of November 13th and what was

14   transferred to Mr. Schlossberg, 14,600 is missing.

15        So from February 1 to December 4th, the Debtor had

16   made use of 397,165.  And then subsequent to that the Trustee

17   paid out funds to the Debtor.  When you add all that up, you

18   know, it's 10,000 plus 157,314 it comes out to 564,479.

19        THE COURT:  So in other words, you take the 564,479

20   and then we say we only got $550,000 of pension funds, so

21   therefore the only amount in dispute is 14,000.  That is your

22   argument?

23        MR. MASTRO:  Right.  That is the excess that he

24   received, so we can subtract that from the 30, and there is

25   like 16,000 and change left.

1          THE COURT:  Okay.

2          (Pause.)

3          MR. MASTRO:  And so basically the question comes,

4    Your Honor, who is going to bear the brunt?  Is it the

5    creditors that are going to have to lose that additional

6    16,000 to Mr. Massenburg?

7          I mean this is -- and, you know, this is a Debtor

8    who spent money as fast as he received it.  I mean by our

9    calculations, I mean, he was spending upwards of $56,000 a

10   month between February 1 of 2013 and December of 2013.

11         He had total income of 565 in that time, and that

12   550 is the pension fund so, you know, he was only working

13   sporadically.  What was he doing as a Debtor in Possession

14   to, you know, create money and pay off his creditors?

15         It really begs the question.  He is just burning

16   through money.  And you look at his Schedule J that he filed,

17   you know, initially, with his expenses, I mean there are

18   about $5,000 worth of expenses that aren't his, they are his

19   girlfriend.

20         I mean he has got -- it is right there, Your Honor.

21   I mean he's got over 4,900 in monthly installment payments

22   for Lanie Nikes.  Student loans, vehicle loans, credit cards,

23   rent, and then there is also utilities.

24         And so the Trustee's position is that

25   Mr. Massenburg wasn't acting as a prudent fiduciary, he was

1   harming the creditors, why should he take the creditors'

2   money now?  Essentially he made his bed and now he needs to

3   sleep in it.

4          THE COURT:  Okay.  Mr. Kirchman?  If you are more

5   comfortable sitting, you may sit.

6          MR. KIRCHMAN:  All right.  No, I am going to try to

7   move.

8          THE COURT:  Okay.

9          MR. KIRCHMAN:  To begin with, I guess it is a

10  Chapter 11 Debtor, an individual, an unlimited obligation to

11  his creditors, then Congress wouldn't have put exemptions for

12  him to use.  Because obviously there are exemptions for the

13  Chapter 11 individual Debtor to use, so obviously Congress

14  understood that that would be used, otherwise they wouldn't

15  have given them to them.

16         Now the Trustee's argument is basically that

17  Mr. Mastro --- tried to *ad hominem* attack basically on

18  Mr. Massenburg in their argument.  But they don't address

19  underlying policy issues of these are exempt funds, and if he

20  wants to spend them he can spend them, and he shouldn't be

21  punished for spending exempt property as he sees fit;

22  otherwise, once again what is the point of the exemption?

23         I mean the Congress has put him in there for

24  Chapter 11 Debtor in Possession -- I mean individual Debtor,

25  so they can use them, so it is not a breach of any ethical

1  obligation he has to anybody, or fiduciary obligation he has

2  to anybody to use those exemptions.

3         Now the question is, he is entitled to spend the

4  money that is exempt, non-exempt for his expenses.  There was

5  no objection filed by the U.S. Trustee.  The U.S. Trustee

6  never came in and said, oh, your expenses are unreasonable,

7  that never happened.

8         No creditor came in and said these expenses, and

9  these are filed, and people can see them, and there is no

10  objection.  Now the Trustee wants to come in and object, I

11  guess, on behalf of the U.S. Trustee's Office, but they

12  haven't done it until now.

13         Now the Debtor is entitled to his exemptions,  that

14  it is just not fair that he has to pay out of his exempt

15  pension fund these living expenses, and that is what is

16  happening here.

17         THE COURT:  What about the Trustee's argument that

18  it is really only 14 or 16,000 at stake because the Debtor

19  already received the benefit of $564,000?

20         MR. KIRCHMAN:  Well, I mean that would have been

21  better taken at the time the Court entered its order defining

22  basically laying out the framework of this case.  I mean that

23  is what happened, the Court entered certain orders which

24  basically set the ground for this, laid out the --

25         THE COURT:  Paid the 30,000, yes.

1          MR. KIRCHMAN:  Yes, laid out the battlefield

2   basically here, and that is where we are.  And the Trustees,

3   if they had some opposition, they should have taken that and

4   made that point at that time and not wait until now.

5          THE COURT:  Okay.  All right

6          MR. MASTRO:  Can I have --

7          THE COURT:  Mr. Mastro, your last word?

8          MR. MASTRO:  Yes, just -- I just wanted to cite to

9   the -- we cited it in our brief, but just to remind the

10  Court, In Re: Bowman, 181 Bankruptcy 836.  Judge Derby talked

11  about fiduciary duties associated with Debtors in Possession,

12  and talked about when you have a conflict between the

13  Debtor's interest as a Debtor, and the Debtor's interest as a

14  fiduciary.

15         And in that, they talked about another case where

16  -- and I think this is a good example, where there is a

17  question of where the post-petition income with Debtor's sole

18  proprietorship, whether that should be property of the Estate

19  or property of the Debtor.

20         And it talked about a conflict between the Debtor

21  in Possession having an obligation to maximize recovery of

22  the Estate, having a self-interest as an employee to make as

23  much money for themselves.

24         But the Court concluded that between the two

25  conflicts the higher duty of the Debtor as a Trustee

1   Fiduciary takes precedence over the more self-interested

2   concerns of the Debtor as an employee, and the same should be

3   applied here.

4           And I recall, when the Debtor filed his motion

5   regarding the pension fund, one of the stated reasons that he

6   needed the pension fund was to pay his personal expenses, so

7   he essentially got what he asked for.  Thank you.

8           THE COURT:  Okay.  I am going to take about 15 or

9   20 minutes, then come out and do a bench ruling, so you all

10  just want to relax.  I will be back up about five-after-

11  three.  Thank you.  This Court will be in a brief recess.

12          (Whereupon, a brief recess was taken.)

13          THE CLERK:  --- Maryland now resumes its regular

14  session, the Honorable Thomas J. Catliota presiding.  Please

15  be seated and come to order.  Recalling the Matter of Tony

16  Arnel Massenburg, Case 12-27073.

17          THE COURT:  All right, before me is the Debtor's

18  motion to require the Chapter 7 Trustee to turn over

19  $30,012.45, filed at ECF 229.  The motion is opposed by the

20  Chapter 7 Trustee by the ECF-236.

21          For the reasons set forth in this Bench ruling I am

22  going to deny the motion and I will enter an order

23  authorizing the Trustee to retain the $30,012.45.

24          The following are my findings of fact:  Tony

25  Massenburg, the Debtor, filed a voluntary petition for

Chapter 11 relief on September 18, 2012.  The case languished
and then on August 15, 2013, Judy A. Robbins, the United
States Trustee for Region Four, filed a motion to dismiss or
convert the case.

        The Debtor initially opposed the motion; however,
the motion was resolved by consent of the Debtor, and on
November 13, 2013, the Court entered an order converting the
case to Chapter 7.

        At the time the Debtor filed the case in September
of 2012, he deposited $126.16 into the Debtor Possession
Account, which I will refer to as to as the DIP Account; see
ECF44-1 at page two of seven.  Between the filing of the
Chapter 11 on September 18, 2012 and February 1 of 2013, the
Debtor deposited $65,261.07 into the DIP Account.

        During that same time the Debtor withdrew $50,684
from the DIP Account and he states those funds were spent on
necessary living expenses.  The balance in the DIP account
was $14,703 as of January 31, 2013.  See ECF51-1, page two of
eleven, which is the January, 2013 monthly operating report.

        The Debtor is a former basketball player,
professional basketball player, who participated in the
National Basketball Association Players Pension Plan.  The
Debtor retired from professional basketball in 2007.  On
February 1 of 2013, while the case was in Chapter 11, the
Debtor received his early retirement pension in a lump sum in

the amount of $550,429.20, which he deposited into his DIP account.

After that, the Debtor continued to deposit it into the DIP account funds he received from other sources.  The Debtor also continued to withdraw funds from the DIP account for various expenditures.  These deposits and expenditures are reflected in the monthly operating reports.

After the Chapter 7 Trustee was appointed he froze the DIP account.  The parties disputed whether the pension funds were exempt funds or, if so, whether they lost their exempt status.

On April 1, 2014, I ruled that the Debtor's pension funds were exempt under the Maryland Statute.  In doing so I rejected the Trustee's argument that the pension funds lost their exempt status because the Debtor commingled the pension funds with other funds in the DIP account, at least with respect to the pension funds in excess of $30,012.45.

I did so for two reasons.  First, I found the Debtor had a good faith belief that he was required to deposit the pension funds into the DIP account.

Second, I noted that immediately before the Debtor deposited the pension funds into the DIP account, the balance in the DIP account was $14,703, and obviously those were not exempt funds.

Also I noted that after February of 2013, and until

the case was converted to Chapter 7, the Debtor also deposited $15,309 of non-exempt, non-pension funds into the DIP account. These two amounts totaled $30,012.45.

The balance in the DIP account never dropped below $30,012.45 after the Debtor deposited the pension funds into that account and until the case was converted.

Therefore, I concluded that the pension funds in an amount in excess of $30,012 did not lose their exempt status as a result of being commingled with the non-pension funds in a DIP account because the Estate could be protected against any loss of the non-exempt funds.

I ordered and entered -- on April 1, 2014, I ordered the Trustee to turnover all of the remaining funds in the DIP account with the exception that he was required to withhold $30,012.45 subject to further order. The Debtor now seeks in a motion, a turnover of the remaining $30,012.45.

The following are my conclusions of law: The Debtor's argument for turnover is based on equity. He argues that if the Trustee is not required to turnover the funds to him, it would result in the Debtor having paid his necessary living expenses exclusively with his pension funds, and that would be an inequitable result.

He argues that methods of tracing commingled funds are an equitable substitute for the impossibility of specific identification and therefore the Court must exercise case

specific judgment to select the method best suited to achieve

a fair and equitable result on the facts before them.  Citing

United States v. Henshaw, 388 F.3d 738 @ 741, Tenth Circuit,

2004.

He further argues that the fair and equitable

result is achieved here by taking the amount that the Debtor

had spent unnecessary expenses prior to the deposit of the

pension funds into the DIP account and using this amount to

determine what would be a reasonable amount of the Debtor's

expenses after the deposit of the pension funds into the DIP

account.

As I mentioned, the Debtor spent $50,684 from the

petition date through January 31, 2013, or approximately

$12,671 per month.

Accordingly, the Debtor argues that he spent much

more than $30,012.45, unnecessary expenses during the period

from February 1, 2013 until the case was converted and

therefore he should receive all of the withheld funds.

He argues it would be inequitable if he was

required to pay his necessary living expenses for the exempt

-- with the exempt pension funds.

I disagree that it would be an inequitable result.

First, the case languished in Chapter 11 from September of

2012, when it was filed, until it was converted in Chapter 7

in November of 2013.

1    U.S. Trustee filed a motion to convert the case and

2    the Debtor opposed the motion for a number of months before

3    recognizing the inevitable and consenting to conversion.

4    Nothing before me establishes or even suggests that

5    the creditors obtained any benefit or were better off by the

6    case being in Chapter 11.

7    No real progress was made toward reorganization.  I

8    don't see any inequity at all in having the Debtor pay his

9    own personal expenses out of his personal funds under these

10   circumstances.  After all they are his personal living

11   expenses.

12   To the contrary, I would conclude -- I conclude it

13   would be inequitable under these circumstances for the

14   creditors of the Estate to pay for the Debtor's personal

15   living expenses considering that the creditors receive no

16   benefit from the Chapter 11 filing.

17   Moreover, as the Trustee points out, the result in

18   granting the Debtor's motion would be that every dollar of

19   Estate funds would have been used by the Debtor to pay his

20   personal living expenses and nothing would be left for the

21   creditors from those funds.

22   Thus contrary to the Debtor's argument, I conclude

23   it would be inequitable for the creditors to pay one hundred

24   percent on the Debtor's personal living expenses under these

25   circumstances.

1    I also reject the Debtor's argument for a second

2 reason.  During the period from February, 2013 until the case

3 was converted the Debtor made no effort to separately

4 account for the pension funds as compared to the non-pension

5 funds in the DIP account.

6    I previously ruled that commingling the pension

7 funds with other funds did not mean the pension funds lost

8 their exempt status for the amount of pension funds above

9 $30,012.45.

10    But the commingling of the funds coupled with the

11 lack of any accounting for the funds leads me to conclude

12 that the remaining funds lost their exempt status.  Stated

13 otherwise, the Debtor could easily have separately accounted

14 for the funds he was spending, but he did not do so.

15    If maybe had he understood that he had to deposit

16 the funds in the DIP account under the United States Trustee

17 Guidelines, but that doesn't mean he could have not have

18 easily accounted for the two groups of funds separately.

19    I conclude, therefore, that it is not inequitable

20 under those circumstances that the Debtor should pay his own

21 living expenses.

22    Finally, the Debtor relies on the principle that if

23 it is possible to construe an exempt statute in ways that are

24 both favorable and unfavorable to the Debtor, then the

25 favorable method should be chosen.

1        I applied this principle when I ruled that the NBA

2   pension funds were exempt under the Maryland statute, but I

3   disagree that the principle is applicable here.

4        I am not construing an exemption statute, rather

5   as the Debtor has framed the issue I am simply determined

6   where the equities lie under these circumstances.

7        The foregoing constitutes my findings of fact and

8   conclusions of law, and I will enter an order accordingly.

9   Thank you all very much.

10        MR. MASTRO:  Thank you, Your Honor.  Do you want me

11   to prepare an order or will the Court prepare an order?

12        THE COURT:  You may prepare one.  Thank you.

13        THE CLERK:  All rise.  This Court is adjourned.

14        (Whereupon, the hearing was concluded.)

<u>C E R T I F I C A T E</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

By

*Jean J. Hudson*    *11-19-2015*
Jean J. Hudson              Date
Certified Transcriber
Certificate No: CET**D-575