## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

IN RE:
TONY ARNEL MASSENBURG

---

TONY A. MASSENBURG,

    Appellant,

    v.

ROGER SCHLOSSBERG,

    Appellee.

Civil Action No. TDC-15-3347

## MEMORANDUM OPINION

On November 3, 2015, Appellant Tony A. Massenburg filed a Notice of Appeal of the Order of the United States Bankruptcy Court for the District of Maryland denying his Motion to Require the Chapter 7 Trustee to Turnover the Remaining $30,012.45 of Debtor's NBA Pension Funds ("Motion to Turnover"). The Appeal is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the judgment of the bankruptcy court is AFFIRMED.

## BACKGROUND

### I.     Massenburg's Bankruptcy Proceedings

On September 18, 2012, Massenburg filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. At the time of filing, Massenburg deposited $126.16 into a debtor-in-possession account ("DIP Account"). When a debtor files for bankruptcy under Chapter 11, the United States Trustee ensures that the debtor closes pre-petition bank accounts and establishes

DIP accounts, into which estate funds are deposited. *See* 7 U.S. Dep't of Justice, *United States Trustee Program Policy and Practices Manual* § 7-1.2.3 (2011), *available at* https://www. justice.gov/ust/file/volume_7_banking_and_bonding.pdf/download. Such accounts remain managed by the debtor, referred to as the "debtor in possession," when no trustee has been appointed to administer the estate. *See* 11 U.S.C. § 1101(1) (2012). Between September 18, 2012 and February 1, 2013, Massenburg deposited $65,261.07 into the DIP Account. During that time period, Massenburg withdrew $50,684 from the DIP Account to cover living expenses, leaving a balance of $14,703 on January 31, 2013.

The account balance increased considerably on February 1, 2013. Massenburg, a former National Basketball Association ("NBA") player who holds an NBA record for playing with 12 different teams, *see* *Most Franchises Played For*, Basketball-Reference.com, http://www.basketball-reference.com/leaders/most_franchises.html (last visited July 19, 2016), received $550,429.20 from his NBA Players Pension Plan ("Pension Plan"). On February 1, 2013, Massenburg deposited the Pension Plan funds into the DIP Account. Between February 1, 2013 and August 15, 2013, Massenburg deposited $15,309 of non-Pension Plan funds into the DIP Account. During the same time frame, he continued to withdraw funds from DIP Account.

On August 15, 2013, the United States Trustee filed a Motion to Convert the Case from Chapter 11 to Chapter 7. On November 13, 2013, the bankruptcy court issued an Order converting the case, finding that "good cause exists for this case to be converted to a case under Chapter 7 pursuant to 11 U.S.C. § 1112 in the best interests of creditors and the estate." App. 315.[1] Once appointed, the Chapter 7 Trustee froze the DIP Account.

---

[1] Unless otherwise specified, record citations are to the Appendix to Appellant's Brief ("App.").

On November 27, 2013, Massenburg filed an Emergency Motion for Turnover of Property. During bankruptcy proceedings, debtors are permitted to set aside certain property as "exempt" from the claims of creditors. *See* 11 U.S.C. § 522; *Sheehan v. Peveich*, 574 F.3d 248, 251 (4th Cir. 2009). On December 6, 2013, the Bankruptcy Court issued an Order finding that the Pension Plan funds were exempt and directing Trustee Roger Schlossberg ("the Trustee"), to turnover to Massenburg approximately $163,000, consisting of all funds in the DIP Account except for $30,012.45, to be subject to a later order. On December 9, 2013, the Trustee filed a Motion to Reconsider, arguing that the Pension Plan funds were not exempt. On April 1, 2014, the bankruptcy court issued an Order finding that the Pension Plan funds were, in fact, exempt and ordering the turnover of all remaining DIP Account funds except for $30,012.45, which was deemed identifiable as nonexempt, non-Pension Plan funds.

## II.    Massenburg's Motion to Turnover

On August 24, 2015, Massenburg filed the Motion to Turnover, seeking the $30,012.45 from the DIP Account not ordered to be returned to him. In his Motion, Massenburg argued that he had the right to spend nonexempt funds on his necessary living expenses and that "the fair and equitable result is achieved by taking the amount that the Debtor had spent on necessary expenses prior to the deposit of the pension funds into the DIP Account and using this amount to determine what would be a reasonable amount for the Debtor's expenses after the deposit of the pension funds into the DIP Account." App. 35.

On October 19, 2015, the bankruptcy court held a hearing on the Motion and denied it based on the conclusion that turnover would be inequitable for two reasons. First, the court reasoned that "the case languished in Chapter 11 from September of 2012, when it was filed, until it was converted in Chapter 7 in November of 2013," that "[n]o real progress was made

toward reorganization," and that the effect of turnover would be to use the entire Chapter 11 estate on Massenburg's living expenses. *Id.* at 52–53. Second, the court noted that while Massenburg "could easily have separately accounted for the funds he was spending, he did not do so," such that any arguably exempt funds within the $30,012.45 lost their exempt status. *Id.* at 54. Finally, in response to Massenburg's assertion that the court should construe exemption statutes in favor of the debtor, the court noted that it had not interpreted an exemption statute, but had instead "determined where the equities lie." *Id.* at 55. Massenburg now appeals the bankruptcy court's ruling.

## DISCUSSION

The issue on appeal is whether the bankruptcy court committed error when it denied his Motion to Turnover. The parties disagree on the standard of review that applies to the bankruptcy court's decision and on whether the bankruptcy court correctly denied the Motion. The Court will address each of these disputes in turn. For the reasons that follow, the bankruptcy court's decision is affirmed.

### I.      Standard of Review

Massenburg asserts that this Court should review legal determinations of the bankruptcy court *de novo* and factual determinations for clear error. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992). He contends that the bankruptcy court's ruling was premised on a legal interpretation of the exemption statute when it stated that "the remaining funds lost their exempt status," App. 54, and that it is thus subject to *de novo* review. By contrast, the Trustee asserts that the standard of review is abuse of discretion, citing *McKinney v. Gannett Co.*, 817 F.2d 659, 670 (10th Cir. 1987), because the Court is reviewing an application of the bankruptcy court's equitable powers.

While Massenburg correctly states the standard of review for factual and legal determinations, his appeal by its own terms concerns an equitable ruling of the bankruptcy court to deny turnover. The one issue he appeals, turnover, is equitable in nature. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 337 (3d Cir. 2004); *Walker v. Weese*, 286 B.R. 294, 299 (D. Md. 2002) ("Commanding turnover is at the very root of the bankruptcy court's equitable powers."). Unlike when it previously ruled in April 2014 that the Pension Plan funds were exempt pursuant to section 11-504(h) of the Code of Maryland, Courts and Judicial Proceedings, the bankruptcy court did not cite or interpret any statute in ruling on the Motion for Turnover. Rather, Massenburg and the court consistently framed the issues in equitable terms. In his Motion, Massenburg sought turnover of the $30,012.25 because it would be "the fair and equitable result" and asked the court to trace the commingled funds because it would be "an equitable substitute for the impossibility of specific identification." App. 35. The bankruptcy court also explicitly stated that "as the Debtor has framed the issue I am simply determin[ing] where the equities lie under these circumstances." *Id.* at 55. In balancing the equities, the court considered that nothing would remain in the Chapter 11 estate if Massenburg's Motion were granted and that Massenburg commingled the Pension Plan funds without accounting for them. Thus, the court ruled in equity, not based on an exemption statute.

Whether the bankruptcy court appropriately balanced the equities in denying Massenburg's Motion to Turnover is reviewed on appeal for abuse of discretion. *See In re Davis*, 936 F.2d 771, 775 (4th Cir. 1991); *McKinney*, 817 F.3d at 670. The Court finds an abuse of discretion when it has a "definite and firm conviction" that the court below "committed a clear error of judgment." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607–08 (6th Cir. 2000) (internal quotation marks and citations omitted); *In re Uwimana*, 284 B.R. 218, 221 (D. Md.

2002). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re M.J. Waterman & Assocs.*, 227 F.3d at 608.

## II.   The Bankruptcy Court's Turnover Ruling

Massenburg asserts that the bankruptcy court erred because (1) it failed to employ a recognized method of tracing to determine what portions of the commingled funds in the DIP Account were exempt and nonexempt; and (2) it inappropriately concluded that the Debtor's withdrawals for living expenses necessarily consisted of exempt Pension Plan funds because he was entitled to spend nonexempt funds on living expenses.  The Court finds no abuse of discretion because the bankruptcy court effectively applied the lowest intermediate balance rule, a tracing method approved by the United States Court of Appeals for the Fourth Circuit in similar circumstances, and because its equitable determination was fair and reasonable under the circumstances.

### A.   Lowest Intermediate Balance Rule

Because Massenburg did not separately account for exempt Pension Plan funds and nonexempt funds when he commingled them in the DIP Account, the bankruptcy court was faced with determining what portion of the remaining funds in the account should be deemed exempt Pension Plan funds that should be returned to Massenburg.  The bankruptcy court had calculated that Massenburg had deposited $30,012.45 of nonexempt funds into the DIP Account. Thus, in declining to order the turnover to Massenburg of the last $30,012.45 in the DIP Account, the bankruptcy court concluded, as a matter of equity, that Massenburg's withdrawals

from the DIP Account for living expenses should be deemed to have come entirely from the exempt Pension Plan funds.

"Ordinarily, a party claiming entitlement to a trust must be able to trace its assets into the fund or property that is the subject of the trust." *In re Dameron*, 155 F.3d 718, 723 (4th Cir. 1998). Here, Massenburg argues that the bankruptcy court abused its discretion by failing to employ a recognized method of tracing commingled funds. In fact, the bankruptcy court implicitly applied the "lowest intermediate balance" rule. This rule, which the Fourth Circuit has approved in cases where trust property has been commingled, is based on the premise that "when faced with the need to withdraw funds from a commingled account, the trustee withdraws non-trust funds first, thus maintaining as much of the trust's funds as possible."[2] *Id.* at 724. Accordingly, under the lowest intermediate balance rule: "[I]f the amount on deposit in the commingled fund has at all times equaled or exceeded the amount of the trust, the trust's funds will be returned in their full amount. Conversely, if the commingled fund has been depleted entirely, the trust is considered lost. Finally, if the commingled fund has been reduced below the level of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account." *Id.* (internal citations and quotation marks omitted).

Although it did not explicitly invoke the lowest intermediate balance rule, the bankruptcy court found that before and after depositing the Pension Plan funds, Massenburg had deposited $30,012.45 in nonexempt funds. The bankruptcy court then observed, "The balance in the DIP account never dropped below $30,012.45 after the Debtor deposited the pension funds into that

---

[2]   Notably, in Chapter 11 proceedings, a debtor-in-possession has all of the rights, powers, and responsibilities, subject to certain exceptions, of a trustee. 11 U.S.C. § 1107(a). Therefore, the lowest intermediate balance rule also applies to debtors-in-possession who withdraw commingled trust funds. *See Braunstein v. Dann Ocean Towing, Inc.*, 383 B.R. 362, 366 (D. Mass. 2008), *rev'd on other grounds*, 571 F.3d 108 (1st Cir. 2009).

account and until the case was converted." App. 51. The court concluded that although "the pension funds in an amount in excess of $30,012[.45] did not lose their exempt status," the remaining $30,012.45 was nonexempt. *Id.* at 51, 54. It had therefore applied the lowest intermediate balance rule, because "the amount on deposit in the commingled fund ha[d] at all times equaled or exceeded" the nonexempt funds, such that those funds were deemed to have been fully preserved. *See In re Dameron*, 155 F.3d at 724. The bankruptcy court did not, as Massenburg suggests, surcharge exempt funds; rather, it applied a recognized rule to deem expenditures from the DIP Account to come first from exempt Pension Plan funds and to trace the $30,012.45 to nonexempt funds Massenburg had previously deposited into the DIP Account. Thus, Massenburg's claim of a lack of tracing fails.

## B.   Necessary Personal Expenses

Massenburg further contends that the bankruptcy court's finding was inequitable because, even in the event that the $30,012.45 was nonexempt, he was entitled to use nonexempt funds for necessary personal expenses. Massenburg spent $12,671 per month in personal expenses prior to depositing the Pension Plan funds, a figure he uses to extrapolate that he spent approximately $114,039 in necessary personal expenses during the nine remaining months of the Chapter 11 proceeding that followed his deposit of the Pension Plan funds. Because this amount exceeds $30,012.45, Massenburg asserts that the $30,012.45 of nonexempt funds were fully expended, so the remaining funds in the DIP Account are all exempt Pension Plan funds to which he is entitled. To support the proposition that he is entitled to use nonexempt funds for living expenses, Massenburg cites 11 U.S.C. § 363, which states, "The trustee, after notice and a hearing, may use, sell, or lease, *other than in the ordinary course of business*, property of the estate." *Id.* (emphasis added). A debtor-in-possession, having the same rights as a trustee,

would thus be permitted to use, sell, or lease property of the estate in the ordinary course of business without notice and a hearing. *See* 11 U.S.C. § 1107(a); *see In re Dant & Russell*, 853 F.2d 700, 704 (9th Cir. 1988) ("The debtor-in-possession is limited by section 363(b), which directs that 'the trustee [or debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the *ordinary course of business*, property of the estate.'") (emphasis in original).

Although the Fourth Circuit has not ruled on whether or how § 363 applies to individuals, some bankruptcy courts have found that individuals operating as Chapter 11 debtors-in-possession may use estate property on personal expenses without notice and a hearing so long as such expenses are in the "ordinary course" rather than unusual or extraordinary. *See In re Seely*, 492 B.R. 284, 290 (Bankr. C.D. Cal. 2013); *In re Bradley*, 185 B.R. 7, 8–9 (Bankr. W.D.N.Y. 1995). *Bradley*, however, involved a debtor who had no source of income other than the estate property. *See In re Bradley*, 185 B.R. at 9. In *Seely*, the court noted that the expense at issue, the hiring of a divorce attorney, was not "in the ordinary course," but ruled that the trustee had waived the right to argue that the debtor-in-possession's personal expenses were for non-ordinary expenses. *See In re Seely*, 492 B.R. at 291. Notably, even though DIP account funds may be used, under certain circumstances, to pay living expenses, there is no requirement that nonexempt funds be spent before any exempt funds possessed by the debtor.

Here, unlike in *Bradley* and *Seely*, Massenburg had $550,429.20 in exempt Pension Plan funds to spend on living expenses. He was not "left with no alternative but to use estate property to pay [his] post-petition living expenses." *See In re Seely* at 289. Moreover, there is some indication that Massenburg's use of Pension Plan funds to cover "expenses" went beyond the ordinary: Massenburg previously testified that he purchased a $92,000 car and spent thousands

of dollars on clothes. Therefore, even though nonexempt DIP accounts may be available to pay ordinary living expenses, Massenburg's ample exempt funds preclude the conclusion that as a matter of equity, Massenburg should be deemed to have first used the nonexempt funds in the DIP Account, rather than his Pension Plan funds, for personal living expenses.

## C.    Balance of Equities

Upon consideration of other factors, the Court finds no abuse of discretion in the bankruptcy court's exercise of its equitable authority. First, as the bankruptcy court observed, the effect of turning over the $30,012.45 to Massenburg would have been that the entire Chapter 11 estate would go toward Massenburg's personal expenses. The bankruptcy court noted that the case "languished in Chapter 11 from September of 2012, when it was filed, until it was converted in Chapter 7 in November of 2013" and "[n]o real progress was made toward reorganization." App. 52-53. Although Massenburg notes that at the time he filed the Motion to Turnover, the Trustee was holding $188,786.13 of his property that would be available for disbursement to creditors, this figure includes a $164,139.10 deposit that Massenburg made on August 6, 2014, after the case was converted to Chapter 7. Thus, the bankruptcy court correctly found that virtually all of the Chapter 11 estate would be expended on Massenburg's living expenses and appropriately considered that fact in assessing the equities.

Second, during the Chapter 11 proceeding, Massenburg, as the debtor-in-possession, stood as a fiduciary, such that he was required to place the interests of his creditors before his own. *See In re J.T.R. Corp.*, 958 F.2d 602, 604–05 (4th Cir. 1992); *In re Bowman*, 191 B.R. 836, 844 (Bankr. D. Md. 1995). This fiduciary obligation consists of a duty of care, which requires the debtor-in-possession "to make good-faith decisions that can be attributed to a rational business purpose," and a duty of loyalty, which "includes an obligation to refrain from self-

dealing, to avoid conflicts of interests and the appearance of impropriety, to treat all parties to the case fairly and to maximize the value of the estate." *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900–01 (8th Cir. 2007).

Given Massenburg's obligations, the bankruptcy court appropriately applied the lowest intermediate balance rule, which considered the expenditures from the DIP Account to have come from exempt Pension Plan funds, rather than the nonexempt funds, because it "maintain[ed] as much of the trust's funds as possible." *See In re Dameron*, 155 F.3d at 724. Indeed, Massenburg previously indicated his intent to use exempt funds before nonexempt funds on personal expenses. In opposing the Trustee's Motion to Convert, counsel for Massenburg stated that "by having available to [Massenburg] exempt assets from which he can make lifestyle and household maintenance payments, he does not have to impinge upon property of the estate, thereby leaving property of the estate for the payment of creditors under the Plan being drafted presently." App. 279. In light of Massenburg's fiduciary duties, it was not an abuse of discretion for the bankruptcy court to find that Massenburg should be deemed to have used his ample exempt funds for his personal expenses.

Third, as the bankruptcy court noted, Massenburg made no effort to separately account for exempt and nonexempt funds in the commingled DIP Account. Massenburg contends that the Bankruptcy Rules do not require him to account for the separate funds, and that the bankruptcy court's findings therefore amounted to an additional accounting requirement. Although there may not be a rule requiring Massenburg to account for funds under these circumstances, the commingling of the DIP Account has rendered identification of the funds impossible without some method of tracing. When faced with such a commingled account, the Fourth Circuit has approved the use of the lowest intermediate balance method, which presumes

that expenditures are made in a manner that preserves the estate's funds to the maximum extent possible. *See In re Dameron*, 155 F.3d at 724.  Given that the commingling was the result of Massenburg's decisions and actions, there is no inequity in applying the recognized lowest intermediate balance rule to conclude that exempt Pension Plan funds were used for Massenburg's withdrawals for living expenses and that nonexempt funds should be deemed to have remained in the DIP Account.

For these reasons, the Court finds that the bankruptcy court did not abuse its discretion in finding that the equities lie in the Trustee's favor, and that the $30,012.45 remaining in the DIP Account was properly treated as nonexempt funds pursuant to the lowest intermediate balance rule.  The Motion for Turnover was thus properly denied.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the judgment of the bankruptcy court is AFFIRMED.  A separate Order shall issue.

Date:  July 25, 2016

THEODORE D. CHUANG
United States District Judge